**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:16-cv-00209-RLV**

| | | |
|---|---|---|
| MICHAEL J. GARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SETERUS, INC., SUBSTITUTE | ) | |
| TRUSTEES SERVICES, INC., HUTCHENS | ) | |
| LAW FIRM, LP, LACEY M. MOORE, | ) | |
| CHRISTOPHER T. SALYER, SHIANN | ) | |
| SCHMIDT, SHAPIRO & INGLE, LLP, | ) | |
| MICHAEL JAY EMREY,  and KYLE | ) | |
| STEWART, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT on** two motions to dismiss and a motion

for judgment on the pleadings.  (Docs. 25, 27, 34).  Defendants Shapiro & Ingle, LLP, Michael

Jay Emrey ("Emrey"), and Kyle Stewart's ("Stewart") (collectively "S&I Parties") move to

dismiss Plaintiff's action under Fed. R. Civ. P. 12(b)(6) ("S&I Motion"), (Doc. 25).  Defendants

Substitute Trustee Services, Inc. ("STSI"), Hutchens Law Firm, LLP, Christopher T. Salyer

("Salyer"), and Shiann Schmidt's ("Schmidt") (collectively "Hutchens Parties") move to dismiss

Plaintiff's action under Fed. R. Civ. P. 12(b)(6) with respect to STSI and the Hutchens Parties and

under Fed. R. Civ. P. 12(b)(2), 12(b)(4), and 12(b)(5) with respect to Salyer, and Schmidt

("Hutchens/STSI Motion").  (Doc. 27).[1]  Defendant Seterus, Inc.'s ("Seterus") filed an Answer

(Doc. 24) to Plaintiff's Complaint and moved for judgment on the pleadings under Fed. R. Civ. P.

12(c) ("Seterus Motion"), (Doc. 34).  Plaintiff Michael J. Garvey ("Plaintiff") filed a Response to

---

[1] Defendant Lacey M. Moore ("Moore") is also a party to the Hutchens/STSI Motion and moves for dismissal based on Fed. R. Civ. P. 12(b)(2), 12(b)(4), 12(b)(5), 12(b)(6), and 8(a).  (Doc. 27).

1

the S&I Motion, (Doc. 30); a Response to the Hutchens/STSI Motion, (Doc. 31); an Amended Response to the Hutchens/STSI Motion, (Doc. 33);[2] a Response to Seterus's Answer, (Doc. 29);[3] and a Response to the Seterus Motion, (Doc. 36). None of the Defendants have filed reply briefs and the time to do so has elapsed. For the reasons stated below the S&I Motion, (Doc. 25), is **GRANTED**; the Hutchens/STSI Motion, (Doc. 27), is **GRANTED**; and the Seterus Motion, (Doc. 34), is **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

### A. Factual Background

Although Plaintiff's Complaint[4] is less than a model of clarity with respect to the specific claims he seeks to raise, the gist of Plaintiff's Complaint is that Defendants "continued to attempt

---

[2] This Court observes that Plaintiff's Amended Response in Opposition to the Hutchens/STSI Motion, (Doc. 33), was not filed in accordance with Local Rule 7.1(E). The Hutchens/STSI Motion was filed on January 20, 2017. (*See* Doc. 27). On January 30, 2017, Plaintiff filed a Response in Opposition to the Hutchens/STSI Motion titled "Consumer's Opposition to Defendants Shapiro & Ingle, LLP, Michael Jay Emrey and Kyle Stewart Motion to Dismiss." (*See* Doc. 31). Plaintiff mistakenly resubmitted his response to the S&I Motion. (*Compare* Doc. 30, *with* Doc. 31; s*ee also* Doc. 33-2). On February 23, 2017, Plaintiff filed an Amended Response in Opposition to the Hutchens/STSI Motion. (*See* Doc. 33). Under the Local Rules, "[r]esponses to motions, if any, shall be filed within fourteen (14) days of the date on which the motion is served, as evidenced by the certificate of service attached to said motion." Local Rule 7.1(E). Where, as here, service is completed by mail, three additional days are added to the deadline to respond. Fed. R. Civ. P. 6(d). Since the Hutchens/STSI Motion was filed on January 20, 2017, Plaintiff's Amended Response was untimely and, thus, not in accordance with Local Rules. Nevertheless, since neither the Hutchens Parties nor STSI raised an objection to the Amended Response, and because the Court had yet to issue a Roseboro Order notifying Plaintiff of his right to respond and of the consequences of failing to respond, *see Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), this Court will accept and consider Plaintiff's Amended Response, (Doc. 33), to the Hutchens/STSI Motion.

[3] Plaintiff's Response to Seterus's Answer is stricken from the record. Under Fed. R. Civ. P. 7(a), Plaintiff was not permitted to file a responsive pleading to Seterus's Answer because Seterus's Answer did not include counterclaims and because Plaintiff's Answer was not filed pursuant to an order of this Court. Thus, Plaintiff's Response to Seterus's Answer is a "superfluous document, not provided for in the Federal Rules of Civil Procedure." *Malbon v. Pa. Millers Mutual Ins. Co.*, 636 F.2d 936, 938 (4th Cir. 1980); *see also Fisher v. Cataldi*, 2016 WL 6208582, at *2 (S.D. Ohio Oct. 21, 2016) ("It is therefore appropriate to strike the unauthorized [answer] from the record."); *Daniel v. Unknown Callet*, 2007 WL 2137819, at *1 (E.D. Mo. July 23, 2007) (striking plaintiff's reply to defendants' answer). Under the Federal Rules of Civil Procedure, a court may *sua sponte*, "stri[ke] from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Culinary & Serv. Emps. Union, AFL–CIO Local 555 v. Haw. Emp. Benefit Admin.*, 688 F.2d 1228, 1230, 1232 (9th Cir. 1982) (stating "the district court has authority under Rule 12(f) to strike a pleading, in whole or in part").

[4] Plaintiff contends that his initial filing with this Court was not a complaint, but rather a "Verified Claim for Violations of the FDCPA and Enforcement Action." (*See* Doc. 30 at 1; Doc. 33 at 1-2; Doc. 29 at 1). Under Fed. R. Civ. P. 3, "[a] civil action is commenced by filing a *complaint* with the court." (Emphasis added). Likewise, a "Verified Claim for Violations of the FDCPA and Enforcement Action" is not a permitted pleading under Fed. R. Civ. P. 7(a). Thus, this Court will construe Plaintiff's initial filing as a complaint.

to collect an alleged debt without providing verified evidence they had a legal right to do so[.]" (Doc. 1 at 6). According to the Complaint, "[t]he property at issue is personal, private property of the [Plaintiff] which was obtained for personal, family, and household use[.]" *Id.* at 7. The debt underlying Plaintiff's Complaint was secured by real property located in Ashe County, North Carolina, at the address 330 Walter Godbrey Road, West Jefferson, North Carolina 28694 ("Subject Property"). (*See* Doc. 1-3; Doc. 1-4; Doc. 1-5).[5] The debt arises out of a Promissory Note ("Note"), which was executed by Plaintiff on March 9, 2004 with Quicken Loans Inc. in the amount of $80,700.00. *In re Garvey*, 772 S.E.2d 747, 748 (N.C. Ct. App. 2015). The Note was secured by a Deed of Trust ("Deed of Trust") executed by Plaintiff Michael J. Garvey, Jane Holzer Godbrey, and Jaqueline Holzer, which granted a lien or encumbrance on the Subject Property. *Id.* Plaintiff defaulted under the payment provisions of the Note. *Id.*[6] On July 16, 2012, an Appointment of Substitute Trustee was recorded with the Ashe County Register of Deeds in Book 00431 at Page 1058, appointing Defendant STSI as the substitute trustee for the Deed of Trust. (*See* Doc. 28-1).

---

[5] In assessing the legal sufficiency of a claim under Fed. R. Civ. P. 12(b)(6), a court may rely on documents that are "integral to and explicitly relied on in the complaint" so long as the non-moving party does not challenge the documents' authenticity. *Phillips v. LCI, Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

[6] This Court takes judicial notice of the prior judicial proceedings related to the disputed debt in the present case. *See In re Garvey*, Case No. 12-SP-98 (N.C. Super. Ct.); *In re Garvey*, 772 S.E.2d 747 (N.C. Ct. App. 2015); *In re Garvey*, Case No. 16-756 (N.C. Ct. App. 2017); *In re Garvey*, Case No. 16-50518 (Bankr. W.D.N.C. 2017). Although a court reviewing a motion to dismiss is generally limited to considering the allegations in the complaint, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (concluding that district court "may clearly take judicial notice" of state court records); *Gasner v. Dinwiddie,* 162 F.R.D. 280, 282 (E.D. Va. 1995) (taking judicial notice of public documents, such as court records, when the documents are pertinent to the complaint but not referenced in the complaint).

The North Carolina Court of Appeals found that the Note "was endorsed by Quicken Loans to Countrywide Document Custody Services, then by Countrywide Document Custody Services to Countrywide Home Loans Inc., and then by Countrywide Home Loans in blank. At some point, Countrywide Home Loans changed its name to BAC Home Loans Servicing LP, which subsequently merged with Bank of America, N.A." *Garvey*, 772 S.E.2d at 748.

3

On August 3, 2012, STSI, by and through its counsel, the Hutchens Law Firm, LP,[7] commenced foreclosure proceedings in Ashe County ("Foreclosure Action") on behalf of the lender, Bank of America, N.A. *Garvey*, 772 S.E.2d at 748; *see In re Garvey*, Case No. 12-SP-98 (N.C. Super. Ct.); (Doc. 1-3). "On January 8, 2012, Pam W. Barlow, Clerk of Superior Court for Ashe County [("Barlow")], held a hearing on whether STSI was entitled to foreclose by power of sale." *Garvey*, 772 S.E.2d at 749. That same day, Barlow entered an order ("January 8 Order"), "'finding that STSI could proceed with foreclosure under the terms of the Deed of Trust.'" *Garvey*, 772 S.E.2d at 749 (ellipses omitted) (quoting *Garvey*, Case No. 12-SP-98, 2012 WL 11045623 (N.C. Super. Ct. Jan. 8, 2012)).

Subsequently, Plaintiff appealed the January 8 Order and, on August 12, 2013, a hearing was held in Ashe County Superior Court. *Id.*; *see Garvey*, Case No. 12-SP-98 (N.C. Super. Ct.). That same day, the Superior Court entered an order ("August 12 Order"), affirming Barlow's January 8 Order. *Garvey*, 772 S.E.2d at 749. Plaintiff appealed the August 12 Order to the North Carolina Court of Appeals, which reversed and remanded the case because the August 12 Order did not contain sufficient factual findings. *See id.* at 751. In 2015, Bank of America transferred the loan to the Federal National Mortgage Association ("Fannie Mae"). *Garvey*, Case No. 12-SP-98 (N.C. Super. Ct. Jan. 13, 2016). Defendant Seterus, as loan servicer on behalf of Fannie Mae, initiated contact with Plaintiff regarding the debt. (Doc. 1 at 7; *see also* Doc. 1-1).[8] Upon remand, the Superior Court issued an order that allowed STSI to proceed with the foreclosure under the

---

[7] The Hutchens Law Firm, LP represented the foreclosing lender, Bank of America, N.A., and the substitute trustee, STSI, in the Foreclosure Action. (*See* Doc. 1-3; Doc. 28-2). Defendants Moore, Salyer, and Schmidt are attorneys at the Hutchens Law Firm, LP. (Doc. 1 at 5).

[8] An Assignment of Deed of Trust was recorded with the Ashe County Register of Deeds in Book 00459 at Page 1754, in which Bank of America assigned its interest in the Deed of Trust to Fannie Mae. Furthermore, the Superior Court order on remand states that "Fannie Mae is the holder of the Note sought to be foreclosed as evidenced by possession of the original Note . . . and it further evidences that this is a valid debt owed, which debt remains unsatisfied." *In re Garvey*, Case No. 12-SP-98 (N.C. Super. Ct. Jan. 13, 2016); (*see* Doc. 28-5). The Superior Court order on remand further states that "Seterus, Inc. is the authorized subservicer for Fannie Mae." *Id.*

4

terms of the Deed of Trust. *Garvey*, Case No. 12-SP-98 (N.C. Super. Ct. Jan. 13, 2016); (*see* Doc. 28-5). Plaintiff appealed the Superior Court's decision to the North Carolina Court of Appeals; however, the appeal was dismissed in April 2017. *See In re Garvey*, Case No. 16-756 (N.C. Ct. App. Apr. 12, 2017).

On August 26, 2016, Plaintiff filed for Chapter 13 bankruptcy protection with the Bankruptcy Court for the Western District of North Carolina ("Bankruptcy Matter"). *See In re Garvey*, Case No. 5:16-bk-50518 (Bankr. W.D.N.C. Aug. 26, 2016); (Doc. 28-6). In the Bankruptcy Matter, the S&I Parties, as counsel for Seterus—the subservicer for Fannie Mae— filed a Notice of Appearance and an Objection to Confirmation. (Doc. 1 at 10-11; *see* Doc. 1-7; Doc. 1-9).[9] The Bankruptcy Matter was dismissed, with Plaintiff receiving no protection under Chapter 13. *Garvey*, Case No. 5:16-bk-50518 (Bankr. W.D.N.C. Oct. 24, 2016); (*see* Doc. 28-6).

B.    Procedural Background

Plaintiff brought the present claim pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"). (Doc. 1). Plaintiff's Complaint primarily alleges that one or more of the Defendants violated the FDCPA by failing to validate and verify the debt as required by § 1692g, by engaging in improper communications with Plaintiff as regulated by § 1692c, by using false and deceptive means in connection with their collection of the debt as prohibited by § 1692e, and by using unfair or unconscionable means to collect the debt as regulated by § 1692f. *Id.*

On November 21, 2016, this Court granted Plaintiff's motion to proceed *in forma pauperis*, directed the Clerk's Office to prepare summons for Defendants, and directed the U.S. Marshal Service ("USMS") to serve the summons and copies of the Complaint on each Defendant. (Doc.

---

[9] Defendants Emrey and Stewart, who are both attorneys at Shapiro & Ingle, LLP, made filings on behalf of Seterus. (Doc. 1 at 5-6).

5

3).  The Clerk issued summons to the USMS for service on each Defendant.  (Doc. 4).  The summons issued to Defendants Moore, Salyer, and Schmidt, all of whom are natural persons named in their individual capacity, were addressed to the respective individual at "Hutchens Law Firm, 4317 Ramsey Street, Fayetteville, NC 28311" for service on "Resident Agent, H. Terry Hutchens" at the same address.  (*See* Doc. 17; Doc. 18; Doc. 19).  On December 12, 2016, the USMS filed three Summons Returned Executed as to Moore, Salyer, and Schmidt, attaching copies of the certified mail return receipts.  (*See* Doc. 17; Doc. 18; Doc. 19).  The three return receipts attached to the Process Receipts and Returns bear the signature of "Shonell Adams."[10]  (*See* Doc. 17; Doc. 18; Doc. 19).

The S&I Parties move to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), arguing that they had no obligation to provide verification of the debt under 15 U.S.C. § 1692g(b) and that they were not required to obtain Plaintiff's consent to file pleadings in the Bankruptcy Matter.  (Doc. 25; Doc. 26 at 4-10).  Defendants Moore, Salyer, and Schmidt move to dismiss Plaintiff's Complaint for insufficient process pursuant to Fed. R. Civ. P. 12(b)(4), for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), and for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  (Doc. 27; Doc. 28 at 5-7).  Defendants STSI, the Hutchens Parties, and Moore move to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), arguing that (1) the Complaint, as to Defendant Moore, fails to satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a); (2) they had no obligation to provide verification of the debt under § 1692g(b); and (3) Plaintiff's FDCPA claims relative to the Foreclosure Action are time barred by 15 U.S.C. § 1692k(d).  (Doc. 28 at 9-11).  After timely answering Plaintiff's Complaint, Seterus filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), (*see* Docs. 24, 34), arguing that

---

[10] The record does not provide any information concerning the identity of Shonell Adams.

it complied with the verification requirements in 15 U.S.C. § 1692g of the FDCPA and that the Complaint does not state a claim regarding prohibited communication under §§ 1692c or 1692g, (Doc. 35 at 5-14).

## II. DISCUSSION

### A. Jurisdiction

This Court's jurisdiction is based on 28 U.S.C. § 1331 and on the FDCPA, the latter of which provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs," 15 U.S.C. § 1692k(d). "[I]n determining when the [one-year] limitations period begins, the majority of courts look to the date at which the defendant engaged in the allegedly abusive action (such as the date a defendant mails a debt communication letter) rather than any subsequent date at which the plaintiff may have felt the harm." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012) (citing *Maloy v. Phillips,* 64 F.3d 607, 608 (11th Cir. 1995); *Mattson v. U.S. W. Commc'ns, Inc.,* 967 F.2d 259, 261 (8th Cir. 1992)). An FDCPA action may also accrue "'when the debtor should have known of the violation, even if the debtor may not be actually aware of the violation.'" *Ross v. Gordon & Weinberg, P.C.*, 2011 WL 3841549, at *3 (W.D.N.C. Aug. 30, 2011) (quoting *Boccone v. Am. Express Co.*, 2007 WL 2914909, at *4 (D. Md. Oct. 4, 2007)); *see Lembach v. Bierman*, 528 F. App'x 297, 302 (4th Cir. 2013) ("We see no reason not to apply the discovery rule to [plaintiff's FDCPA claim]."). Furthermore, "the limitations period for FDCPA claims commences from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md.), *aff'd,* 584 F. App'x 135 (4th Cir. 2014) (quotation marks omitted). Accordingly, courts

7

have routinely rejected a continuing violation theory within the context of FDCPA's statute of limitations. *Id.*; *see also Fontell,* 870 F. Supp. 2d at 404) (rejecting continuing violation theory); *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007) ("[N]ew communications concerning an old claim [do] not start a new period of limitations.").

In addition to the constraint on bringing claims under the FDCPA imposed by the one-year statute of limitations, the *Rooker-Feldman* doctrine is a jurisdictional doctrine that may be raised *sua sponte*. *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 195-96 (4th Cir. 2002) (noting court was "obliged to address [*Rooker-Feldman* doctrine] before proceeding"). "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005)). The doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. Here, the *Rooker-Feldman* doctrine does not bar Plaintiff's claims because Plaintiff filed his Complaint in the present case in November 2016, (*see* Doc. 1), while the Foreclosure Action did not become final until after the North Carolina Court of Appeals dismissed Plaintiff's second appeal in 2017, *see Garvey*, Case No. 16-756 (N.C. Ct. App. 2017). *See Nicholson v. Shafe,* 558 F.3d 1266, 1275 (11th Cir. 2009) (concluding *Rooker–Feldman* doctrine does not apply where state court judgment is pending on appeal at time federal plaintiff commences federal court action). Accordingly, the Court can proceed to evaluate the Defendants' motions.

B.    <u>Hutchens/STSI Motion under Fed. R. Civ. P. 12(b)(4), 12(b)(5) and 12(b)(2) as to Defendants Moore, Salyer, and Schmidt</u>

Defendants Moore, Salyer, and Schmidt move to dismiss Plaintiff's Complaint for insufficient process pursuant to Fed. R. Civ. P. 12(b)(4), for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), and for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (Doc. 28 at 5). Specifically, Moore, Salyer, and Schmidt contend that service was not properly effectuated under Fed. R. Civ. P. 4(e) when the USMS mailed the respective process to Hutchens Law Firm for service on the registered agent and, as a result, this Court lacks personal jurisdiction over them. (Doc. 28 at 5-6). In response, Plaintiff argues that, since Moore, Salyer, and Schmidt are employees of Hutchens Law Firm and the registered agent for Hutchens Law Firm was served, service on the three individuals was proper. (Doc. 33 at 3). In addition, Plaintiff asserts that "[i]f Defendants/Debt Collectors have an issue with service, then they need to address the court clerk and the Marshal who executed service for [Plaintiff]." (Doc. 33 at 3).[11]

"Rules 12(b)(4) and 12(b)(5) are often confused. Rule 12(b)(4) concerns the sufficiency of the form of the process, rather than the manner or method by which it is served. Rule 12(b)(5), on the other hand, challenges the mode of delivery or the lack of delivery of the summons and complaint." *Davies v. Jobs & Adverts Online, Gmbh,* 94 F. Supp. 2d 719, 721 n.5 (E.D. Va. 2000) (citing 5A Wright & Miller, Fed. Prac. & Proc. § 1353 (2d 1990)). Here, since Moore, Salyer, and Schmidt challenge the manner of service, this Court will review the motion under Rule 12(b)(5).

---

[11] Plaintiff characterizes Moore, Salyer, and Schmidt's motion under Rules 12(b)(4), 12(b)(5), and 12(b)(2) as a "violation of 15 USC §1692e false, deceptive, and misleading misrepresentation" and appears to seek sanctions against Moore, counsel for the Hutchens Parties in the present case. Under the Local Rules, "[m]otions shall not be included in responsive briefs. Each motion should be set forth as a separately filed pleading." Local Rule 7.1(C)(2). As such, this Court need not rule on Plaintiff's purported motion for sanctions.

9

When a plaintiff proceeds *in forma pauperis*, the district court must direct the USMS to effectuate service of process. *See* 28 U.S.C. § 1915(d) (2012); Fed. R. Civ. P. 4(c)(3). However, a plaintiff is responsible for providing "sufficient information to identify the defendant" with "reasonable effort." *Odom v. Ozmint*, 517 F. Supp. 2d 764, 768 (D.S.C. 2007). A plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Rule 4. *Scott v. Maryland State Dep't of Labor*, 673 F. App'x 299, 303 (4th Cir. 2016) (citing *Dickerson v. Napalitano*, 604 F.3d 732, 752 (2d Cir. 2010). "The real purpose of service of process is to give notice to the defendant, and mere technicalities should not stand in the way of consideration of a case on its merits." *Id.* at 304 (brackets, internal citations, and quotation marks omitted). "'Actual notice', however, is not the controlling standard." *Id.* Although courts typically liberally construe rules governing service of process when the defendant receives actual notice, the rules "'are there to be followed, and plain requirements may not be ignored.'" *Id.* (ellipses omitted) (quoting *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)).

Under Fed. R. Civ. P. 4(e), a natural person may be served by: (1) delivering a copy of the summons and complaint to the party personally; (2) leaving a copy of the summons and complaint at the party's dwelling or usual place of abode with someone of suitable age and discretion who resides there; (3) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process; or (4) by following state law procedures. Fed. R. Civ. P. 4(e). Relevant here, under North Carolina law, an individual may be served "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. R. Civ. P. 4(j)(1)(c).

10

Here, Plaintiff failed to properly effect service upon Defendants Moore, Salyer, and Schmidt in accordance with Fed. R. Civ. P. 4(e) or N.C. R. Civ. P. 4(j)(1)(c). The caption of Plaintiff's Complaint explicitly states that process for Moore, Salyer, and Schmidt was to be "serve[d] on H. Terry Hutchens, Resident Agent, Hutchens Law Firm, 4317 Ramsey Street, Fayetteville, NC 28311." (Doc. 1 at 1-2). Process intended for Moore, Salyer, and Schmidt was sent via certified mail for service upon H. Terry Hutchens, resident agent of Hutchens Law Firm, and the return receipts were signed by Shonell Adams, an unknown individual. (*See* Docs. 17, 18, 19). The process was not left at the parties' dwelling or usual place of abode, and Plaintiff has not demonstrated that either Shonell Adams or H. Terry Hutchens is an agent authorized to accept service of process for Moore, Salyer, or Schmidt. Therefore, Plaintiff has not satisfied his burden of showing that Moore, Salyer, and Schmidt were properly served with process in accordance with Fed. R. Civ. P. 4(e) or N.C. R. Civ. P. 4(j)(1)(c). *See Williams v. Hetzel*, 2012 WL 2577042, at *1 (W.D.N.C. July 3, 2012) (concluding that defendant named in individual capacity was not properly served where process was sent via certified mail to defendant's office, but was not signed for by defendant).

Plaintiff's failure to properly complete service provides ample basis for granting Moore, Salyer, and Schmidt's motion to dismiss under Fed. R. Civ. P. 12(b)(5).[12] However, a dismissal under Rule 12(b)(5) for failure to properly complete service is a dismissal without prejudice, typically permitting the Plaintiff an opportunity to refile his complaint and properly effectuate service of process. *See Pitts v. O'Geary*, 914 F. Supp. 2d 729, 735 (E.D.N.C. 2012). To limit the

---

[12] Furthermore, Defendants Moore, Salyer, and Schmidt argue that Plaintiff's Complaint should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) because, since they were not properly served, this Court lacks personal jurisdiction over them. (Doc. 28 at 6). "When service of process is insufficient, a court lacks personal jurisdiction over the defendant." *McDaniel v. Greyhound Lines, Inc.*, 2008 WL 2704774, at *5 (W.D.N.C. July 7, 2008); *see also Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998) ("Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant."). Because Moore, Salyer, and Schmidt were not properly served, this Court lacks personal jurisdiction over them.

refiling of complaints that do not properly state a claim, a court that concludes that service was not properly completed for purposes of Rule 12(b)(5) may proceed and consider a defendant's alternative argument for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Scott*, 673 F. App'x at 307 ("[R]egardless of whether the individual defendants were properly served, the district court correctly concluded that the violations of Title VII and the ADEA alleged in the complaint failed to state a claim for relief against them."); *Anderson v. Gates*, 20 F. Supp. 3d 114, 120 (D.D.C. 2013) ("[A]lthough the Court lacks personal jurisdiction over defendants in their individual capacities [due to insufficient service of process], it will nonetheless analyze Anderson's constitutional claims against them and dismiss those claims under Rule 12(b)(6).").

    C.    <u>S&I Motion and Hutchens/STSI Motion under Fed. R. Civ. P. 12(b)(6)</u>

        i.    *Standard of Review*

Rule 12(b)(6) provides for the dismissal of a claim based upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a motion to dismiss, a court must construe the complaint's factual allegations "in the light most favorable to the plaintiff" and "must accept as true all well-pleaded allegations." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A court, however, "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotation marks omitted).

As stated above, this Court has taken judicial notice of the prior judicial proceedings related to the disputed debt underlying Plaintiff's Complaint. *See In re Garvey*, Case No. 12-SP-98 (N.C. Super. Ct.); *In re Garvey*, 772 S.E.2d 747 (N.C. Ct. App. 2015); *In re Garvey*, Case No. 16-756

(N.C. Ct. App. 2017); *In re Garvey*, Case No. 16-50518 (Bankr. W.D.N.C. 2017). "[W]hen a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs." *Zak v. Chelsea Therapeutics Int'l, Ltd.,* 780 F.3d 597, 607 (4th Cir. 2015) (citation omitted). Conversely, a court need not "accept as true allegations that contradict matters properly subject to judicial notice." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

While Fed. R. Civ. P. 8(a)(2) does not require "detailed factual allegations," a complaint must offer more than "naked assertion[s]" and unadorned "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the pleading stage," *id.* at 556, but does demand more than a "sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 662. Ultimately, a claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

In applying the 12(b)(6) standard, the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions[.]" *Giarratano*, 521 F.3d at

13

304 n.5 (quotation marks omitted) (applying *Twombly* standard in affirming dismissal of *pro se* complaint); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Erickson*, 551 U.S. at 94; *Iqbal*, 556 U.S. at 679)). The rules governing the generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Ashby v. City of Charlotte*, 121 F. Supp. 3d 560, 562 (W.D.N.C. 2015) (quotation marks omitted).

### ii. *Claims against Moore*

As an initial matter, Defendant Moore argues that Plaintiff's Complaint fails to satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a). (Doc. 28 at 9-10). Although Plaintiff's Complaint identifies Moore as a debt collector for purposes of the FDCPA, it does not allege that Moore took any specific actions relative to collecting the debt underlying Plaintiff's present action. (*See* Doc. 1). Therefore, Plaintiff's Complaint does not satisfy Rule 8(a) as to Moore, and Plaintiff's action against Moore is **DISMISSED WITHOUT PREJUDICE**.

### iii. *Fair Debt Collection Practices Act*

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (citing 15 U.S.C. § 1692e). Every FDCPA claim must establish three prima facie elements: (1) "the plaintiff is a 'consumer' within the meaning of the statute; (2) the defendant collecting the debt is a 'debt collector' within the meaning of the statute; and (3) the defendant has violated by act or omission a provision of the FDCPA. *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997). In the present case,

14

Defendants do not challenge whether Plaintiff's Complaint satisfies the first two elements. (*See* Doc. 26 at 4; Doc. 28 at 9-11). Thus, the sole issue before the Court on the motions to dismiss under Fed. R. Civ. P. 12(b)(6) is whether Plaintiff has sufficiently pled the third element for each individual charge.

1.      Section 1692g

Plaintiff raises claims against the S&I Parties, STSI, and the Hutchens Parties under the Validation of Debts provision of the FDCPA. *See* 15 U.S.C. § 1692g. Under § 1692g(a), within five days after making an "initial communication" with a consumer in connection with the collection of a debt, a collector must send the consumer a written notice containing: (1) the debt amount; (2) the name of the current creditor; (3) a statement that, if the consumer disputes the debt in writing within thirty days, the collector will provide verification of the debt; (4) a statement that if the consumer does not dispute the debt within thirty days the collector will assume the debt to be valid; and (5) a statement that the collector will send the name of the original creditor, upon written request within thirty days. 15 U.S.C. § 1692g(a). Section 1692g(b), in relevant part, provides that:

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt . . . is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). The United States Court of Appeals for the Fourth Circuit has elaborated that:

> verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. . . . Consistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect

15

debts which the consumer has already paid. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (internal citations and quotation marks omitted).

With respect to the S&I Parties, who represented Seterus in the Bankruptcy Matter, Plaintiff alleges that he "never received *verification and validation sworn to under oath*" of the debt. (*See* Doc. 1 at 11 (emphasis in original)). On September 16, 2016, shortly after the S&I Parties filed a Notice of Appearance in the Bankruptcy Matter, Plaintiff sent the S&I Parties a letter titled, in part, "Demand Notice to Cease and Desist All Collection Activities" ("S&I Demand Notice"). (Doc. 1 at 10; *see* Doc. 1-8). The S&I Demand Notice demanded that the S&I Parties provide verification under penalty of perjury to substantiate the claim that the alleged debt was owed to their client, Seterus, as subservicer for Fannie Mae. (Doc. 1-8). Furthermore, the S&I Demand Notice stated that, if the S&I Parties failed to provide verification within seven days, they would waive any and all claims against Plaintiff. *Id.* at 3-4. Plaintiff argues that, since the S&I Parties did not provide verification sworn to under oath, they violated § 1692g(b).

The S&I Parties were not obligated to respond to the S&I Demand Notice under § 1692g(b). The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. § 1692a(2). However, "a communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." 15 U.S.C. § 1692g(d); *see Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 (2d Cir. 2017) (holding that foreclosure complaint and documents "superfluously" attached thereto were not initial communications within the meaning of the FDCPA). Here, with the exception of the Notice of Appearance and Objection to Confirmation in connection with the Bankruptcy Matter, Plaintiff's Complaint does not allege that the S&I Parties

16

made any communication with Plaintiff.  Neither the Notice of Appearance nor the Objection to Confirmation constitute an initial communication because they were civil court filings and exempted from being an initial communication by § 1692g(d).  Accordingly, Plaintiff does not allege facts establishing that the S&I Parties were obligated, under § 1692g, to respond to the S&I Demand Notice.

Even if the S&I Parties were obligated to respond to the S&I Demand Notice; Plaintiff does not allege that the S&I Parties did not respond; instead, Plaintiff only alleges that he did not receive a response that was sworn and under oath.  (*See* Doc. 1 at 11).  Section 1692g(b) only mandates that the "debt collector shall cease collection of the debt until . . . the debt collector obtains verification of the debt and a copy of such verification is mailed to the consumer by the debt collector."  15 U.S.C. § 1692g(2).  As noted by the Fourth Circuit, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed."  *Chaudhry*, 174 F.3d at 406.  A consumer may not unilaterally mandate that a debt collector comply with conditions that are not contained in the statute, such as requiring the response be "under oath" or "under penalty of perjury," and then bring suit under the FDCPA based on the debt collect's failure to comply with the consumer's extra-statutory demands.  Here, the S&I Parties letter to Plaintiff dated October 4, 2016 enclosed copies of the original Note and Deed of Trust, and the latter included the name and address of the original creditor.  (Doc. 26-1).  It is without consequence under the FDCPA that the Plaintiff does not consider these documents sufficient to satisfy his personal verification requirement.  (Doc. 30 at 2).  Therefore, Plaintiff's allegations, taken as true, do not state a violation of 15 U.S.C. § 1692g as to the S&I Parties.  In light of the fact that the S&I Parties did not make an initial communication and that they, nonetheless, did respond to Plaintiff's S&I Demand Notice, it is not apparent that

17

any amendment to Plaintiff's Complaint could result in Plaintiff stating a valid claim against the S&I Parties under 15 U.S.C. § 1692g. Accordingly, Plaintiff's § 1692g claim against the S&I Parties is **DISMISSED WITH PREJUDICE**.

With respect to STSI and the Hutchens Parties, the substitute trustee under the Deed of Trust and counsel for the foreclosing lender respectively, Plaintiff also alleges that he "never received *verification and validation sworn to under oath*" of the debt. (Doc. 1 at 10). On September 2, 2016, Plaintiff sent STSI a notarized letter titled, in part, "Demand Notice to Cease and Desist All Collection Activities" ("STSI Demand Notice"). (Doc. 1 at 9; *see* Doc. 1-6 at 7). Among other things, the STSI Demand Notice demanded that STSI cease all collection activities until STSI provided Plaintiff with "verification and supporting evidence of the debt signed and certified under penalty of perjury to substantiate your claim." (Doc. 1-6 at 8). The STSI Demand Notice further provided that, if STSI failed to provide verification under oath within ten days, STSI would "tacitly agree" that it has no lawful claim to the Subject Property and that it would pay Plaintiff $500.00 per day. *Id.* at 9. Also on September 2, 2016, Plaintiff sent Hutchens Law Firm a notarized Demand Notice ("Hutchens Demand Notice"). (Doc. 1 at 9; *see* Doc. 1-6 at 12). The Hutchens Demand Notice contained the same demand for verification under oath within ten days and the same list of "tacit agreements," which would be triggered if Hutchens Law Firm failed to respond within ten days. (Doc. 1-6 at 14).

STSI and the Hutchens Parties were not obligated to respond to the respective Demand Notices under 15 U.S.C. § 1692g(b). Under § 1692g(b), a consumer must notify "the debt collector in writing within the thirty-day period [following the debt collector's initial communication] that the debt . . . is disputed, or that the consumer requests the name and address of the original creditor[.]" § 1692g(b). Here, Plaintiff concedes that the initial communications

by Hutchens Parties and STSI were made in 2012. (Doc. 33 at 5). However, the Hutchens Demand Notice and the STSI Demand Notice were not sent until 2016. Thus, neither STSI nor the Hutchens Parties had any obligation to respond under § 1692g(b). Therefore, Plaintiff's allegations, taken as true, do not amount to a violation of 15 U.S.C. § 1692g by STSI or the Hutchens Parties and his § 1692g claim against STSI and the Hutchens Parties is **DISMISSED WITH PREJUDICE**.

2.     Section 1692c

Plaintiff also raises claims against the S&I Parties, STSI, and the Hutchens Parties under the Communication in Connection with Debt Collection provision of the FDCPA. *See* 15 U.S.C. § 1692c. Under § 1692c(a), a debt collector may not communicate with a consumer (1) "at any unusual time or place;" (2) if the collector "knows the consumer is represented by an attorney with respect to such debt;" or (3) "at the consumer's place of employment." 15 U.S.C. § 1692c(a). Furthermore, § 1692c(c) provides that a debt collector must cease communication with a consumer upon notice by the consumer that he refuses to pay the debt or upon the consumer's demand that the collector cease further communication. § 1692c(c).[13] The FDCPA defines communication broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007) (quoting § 1692a(2)).

Plaintiff alleges that the S&I Parties violated § 1692c(a) by filing the Notice of Appearance and Objection to Confirmation in the Bankruptcy Matter because Plaintiff did not give the S&I

---

[13] However, a debt collector may communicate with a consumer after notice under § 1692c(c) in the following circumstances:

> (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

§ 1692c(c)(1)-(3).

Parties his consent to contact him.  (*See* Doc. 1 at 11).  However, the Complaint does not allege any facts that indicate any of the § 1692c(a) restrictions were violated; instead, Plaintiff appears to contend that, after he sent the S&I Demand Notice, § 1692(c) estopped the S&I Parties from filing pleadings in the Bankruptcy Matter.  *See id.*  This argument has no basis in logic or law.  As a matter of logic, under Plaintiff's line of reasoning, a creditor would be exposed to FDCPA liability by pursuing judicial remedies against any consumer that defaults and demands the creditor cease communication.  Legally speaking, the United States Supreme Court has interpreted Sections 1692c(c)(2) and 1692c(c)(3) as implicitly permitting the exchange of "ordinary court-related document[s]" in connection with a debt-collection lawsuit or proceeding.  *See Heintz v. Jenkins*, 514 U.S. 291, 296-97 (1995).  Thus, filing the Notice of Appearance and Objection to Confirmation and serving those documents on Plaintiff did not violate § 1692c.

Plaintiff also alleges that the Hutchens Parties and STSI, through a Notice of Foreclosure, violated § 1692c(a) because he never gave them his consent to contact him.  (Doc. 1 at 8-9). Although Plaintiff's Complaint alleges that he received the Notice of Foreclosure in 2016, the foreclosure action commenced in 2012 and Plaintiff acknowledges in his Response to the Hutchens/STSI Motion that he received an initial communication in 2012.  *See In re Garvey*, 772 S.E.2d at 748; (*see also* Doc. 33 at 5).  An action to enforce liability under the FDCPA must be brought within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d).  Since Plaintiff did not file his Complaint within one year of the initial communication, his § 1692c(a) claim against the Hutchens Parties and STSI is untimely.  Even, however, if the claim were not time barred, § 1692c does not provide any general restriction against debt collectors communicating with a consumer regarding a debt without first receiving the consumer's consent.[14]

---

[14] As a matter of logic, it would be impossible for a debt collector to obtain a consumer's consent before making an "initial communication" because any attempt to gain consent would require the debt collector to convey information

20

Accordingly, Plaintiff has not stated a viable claims under § 1692c and his § 1692c claims are **DISMISSED WITH PREJUDICE** as to the S&I Parties, the Hutchens Parties, and STSI.

### 3. Section 1692e

Plaintiff states that S&I Parties, STSI, and the Hutchens Parties violated 15 U.S.C. § 1692e, the False or Misleading Representations provision of the FDCPA. Determining the specific nature of Plaintiff's claim(s) under § 1692e is challenging but, liberally construing Plaintiff's Complaint and considering Plaintiff's responses, Plaintiff may have raised two claims under § 1692e. First, Plaintiff contends that the S&I Parties made a false and misleading representation for purposes of § 1692e(2)(A) and § 1692e(10). (Doc. 30 at 2-3). Section 1692e(2)(A) prohibits a debt collector from making a false representation as to "the character, amount, or legal status of any debt," and Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff alleges that the identification of Fannie May as a creditor was misleading because Fannie Mae was never a creditor of Plaintiff. (Doc. 30 at 2-3). However, the Ashe County Superior Court, through its order on remand allowing the foreclosure to proceed, determined that "Fannie Mae is the holder of the Note sought to be foreclosed as evidenced by possession of the original Note, endorsed in Blank, and it further evidences that this is a valid debt owed, which debt remains unsatisfied." *Garvey*, Case No. 12-SP-98 (N.C. Super. Ct. Jan. 13, 2016); (Doc. 28-5). Furthermore, an Assignment of Deed of Trust was recorded with the Ashe County Register of Deeds in Book 00459 at Page 1754, in which Bank of America assigned its interest in the Deed of Trust to Fannie Mae.

---

about the debt, thus qualifying the attempt to gain consent as an initial communication. *See* 15 U.S.C. § 1692a(2) (defining "communication" broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium").

Thus, Plaintiff's claim of false and misleading representation against the S&I Parties is rebutted by public records, which are subject to judicial notice.

Second, Plaintiff alleges that the Hutchens Parties and STSI violated various § 1692e provisions "[b]y continuing the illegal non-judicial foreclosure action[.]" (Doc. 33 at 6). As earlier noted, an action to enforce liability under the FDCPA must be brought within one year from the date on which the violation first occurs. 15 U.S.C. § 1692k(d); *see also Bey*, 997 F. Supp. 2d at 316 (rejecting continuing violation theory). Plaintiff concedes that the Foreclosure Action commenced in 2012, (Doc. 1 at 8), and that STSI and the Hutchens Parties initiated contact regarding the debt in 2012, (Doc. 33 at 5). Thus, for Plaintiff's claims related to the Foreclosure Action to be timely, a complaint must have been filed within one year of the commencement of the Foreclosure Action. *See* § 1692k(d). Since Plaintiff did not file the present action until 2016, any claims against the Hutchens Parties and STSI related to the initiation of the Foreclosure Action are untimely. Accordingly, Plaintiff has not stated a viable claim under § 1692e and the aforementioned § 1692e claims are **DISMISSED WITH PREJUDICE** as to the S&I Parties, the Hutchens Parties, and STSI.

4.      Section 1692f

Plaintiff also raises claims against STSI and the Hutchens Parties under the Unfair Practices provision of the FDCPA. *See* 15 U.S.C. § 1692f. Specifically, Plaintiff alleges that Hutchens Parties and STSI violated § 1692f(6) by filing the Foreclosure Action. (Doc. 1 at 11). Under § 1692f, a debt collector may not take or threaten to take any nonjudicial action to effect dispossession or disablement of property if "there is no present right to possession of the property claimed as collateral through an enforceable security interest," 15 U.S.C. § 1692f(6)(A), or "the property is exempt by law from such dispossession or disablement," 15 U.S.C. § 1692f(6)(C). As

22

with Plaintiff's other claims stemming from the filing of the Foreclosure Action, Plaintiff's § 1692f claim is time barred under § 1692k(d) because Plaintiff did not bring the present action within one year of the commencement of the Foreclosure Action. Even, however, if the § 1692f claim was not time barred, Plaintiff has not presented any factual allegations in support of his contention that the Hutchens Parties and STSI did not have a lawful right to bring a foreclosure action following Plaintiff's default under the Note. Indeed, the allegations underlying these claims are contradicted by the state court record. *See Garvey*, Case No. 12-SP-98 (N.C. Super. Ct. Jan 13, 2016). Accordingly, Plaintiff has not stated a viable claim under § 1692f and his § 1692f claim is **DISMISSED WITH PREJUDICE** as to the Hutchens Parties, and STSI.[15]

### 5. General Allegations

The remaining allegations in the Complaint are conclusory and insufficiently pled. In paragraph 21 of the Complaint, Plaintiff asserts a claim against Defendants "for taking actions that strictly prohibit debt collectors from engaging in abusive, deceptive and unfair practices." (Doc. 1 at 7). The Court will construe this allegation as a claim against all Defendants under 15 U.S.C. § 1692d. Section 1692d prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Plaintiff's Complaint does alleges any facts in support of this conclusory allegation, including what acts Plaintiff believes were abusive, deceptive or unfair or which Defendant(s) committed the act(s) giving rise to the § 1692d claim. Accordingly, Plaintiff's claim under 15 U.S.C. § 1692d is **DISMISSED WITHOUT PREJUDICE**.

The Complaint further alleges that: (1) "Every communication from the debt collectors including filing in the foreign state tribunal an illegal debt collection action and were violations in

---

[15] To the extent Plaintiff raises a claim against the S&I Parties under § 1692f, the Court addresses it in the subsequent "General Allegations" section of this Order.

15 U.S.C. § 1692e(4), § 1692e(5), § 1692f(6)(A) and (6)(C), and §1692j(a) and (b)," (Doc. 1 at 11); (2) that Defendants, after being notified to cease and desist collection attempts and to provide verification, "continued with their deceptive, misleading, illegal, abusive and harassing debt collection activities, in violation of 15 U.S.C. § 1692g(b), and illegally continued a non-judicial foreclosure action in a foreign state tribunal outside the United States in violation of 15 U.S.C. § 1692e(4), § 1692e(5), § 1692e(9), § 1692e(10), § 1692f(6)(A) and (C), § 1692i, and § 1692j," (Doc. 1 at 12); (3) Defendants "have put this [Plaintiff] into commerce by initiating an illegal debt collection action in a foreign state tribunal that is outside the jurisdiction of the United States, and is a violation of 15 U.S.C. § 1692i," (Doc. 1 at 13); (4) Defendants "designed and compiled deceptive and false communications that they recorded into a foreign state tribunal, which were used to mislead and deceive, and create a false belief in [Plaintiff] that they had the authority to demand payments for an alleged debt (violations of 15 U.S.C. §§ 1692e(2), 1692e(4), § 1692e(5), § 1692e(10), and (13)), and that they had the legal authority to sell [Plaintiff's] personal, private property," (Doc. 1 at 13); (5) "[t]he assignments that were created and publicly recorded is a violation of 15 U.S.C. § 1692j(a), and was compiled and designed to collect payment from the consumer," (Doc. 1 at 13); (6) Defendants "falsely represented the amount that was allegedly due and owing by [Plaintiff], in violation of 15 U.S.C. § 1692e(2)(A)," (Doc. 1 at 13); and (7) Defendants have "violated 15 U.S.C. § 1692f(6) in initiating a non-judicial foreclosure action in a foreign state tribunal," (Doc. 1 at 13).

In the absence of factual allegations, Plaintiff's unadorned labels and conclusions do not satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2). Granted, a *pro se* complaint must be held to less stringent standards, *Erickson*, 551 U.S. at 94; however, this Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano*, 521 F.3d at

302, nor must it "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," *Veney*, 293 F.3d at 730. Accordingly, any claims stemming from the aforementioned allegations and not already addressed in this Order are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 12(b)(6).

D.     Seterus's Motion under Fed. R. Civ. P. 12(c)

Defendant Seterus moves for dismissal under Fed. R. Civ. P. 12(c). (Doc. 34). A Court applies the same standard of review to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as it does to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). However, whereas a motion to dismiss under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed," Fed R. Civ. P. 12(b)(6), a motion for judgment on the pleadings under Rule 12(c) permits a party to move for judgment "[*a*]*fter the pleadings are closed*—but early enough not to delay trial," Fed. R. Civ. P. 12(c) (emphasis added). "[T]he pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering." *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009); *see Guthrie v. Nw. Mut. Life Ins. Co.*, 2010 WL 3260001, at *4 (D. Md. Aug. 18, 2010) (holding that Fed. R. Civ. P. 12(c) motion could not properly be considered where moving defendant had filed an answer but two other defendants had filed motions to dismiss rather than answers).

Here, Seterus' Motion for Judgment on the Pleadings under Rule 12(c) is premature. The pleadings were not closed when Seterus' filed its motion. Specifically, STSI, the S&I Parties, the Hutchens Parties, and Moore had not filed answers to Plaintiff's Complaint when Seterus moved

for judgment on the pleadings.  Therefore, the Seterus Motion (Doc. 34) is **DENIED WITHOUT PREJUDICE**.  Seterus may refile its motion under Rule 12(c) after the issuance of this order.

III.    **DECRETAL**

**IT IS, THEREFORE, ORDERED THAT:**

(1)    The Clerk is **DIRECTED** to strike Plaintiff's Response (Doc. 29) to Seterus's Answer from the record;

(2)    Defendants Shapiro & Ingle, LLP, Michael Jay Emrey and Kyle Stewart's Motion to Dismiss (Doc. 25) is **GRANTED**;

(3)    Defendants Substitute Trustee Services, Inc., Hutchens Law Firm, Christopher T. Salyer, Shiann Schmidt, and Lacey M. Moore's Motion to Dismiss (Doc. 27) is **GRANTED**;

(4)    Defendant Seterus, Inc.'s Motion for Judgment on the Pleadings (Doc. 34) is **DENIED WITHOUT PREJUDICE**;

(5)    Plaintiff's claims as against Defendants Shapiro & Ingle, LLP, Michael Jay Emrey, Kyle Stewart, Substitute Trustee Services, Inc., Hutchens Law Firm, Christopher T. Salyer, Shiann Schmidt, and Lacey M. Moore are **DISMISSED** in a manner consistent with this Order; and

(6)    The Clerk is **DIRECTED** to terminate Shapiro & Ingle, LLP, Michael Jay Emrey, Kyle Stewart, Substitute Trustee Services, Inc., Hutchens Law Firm, Christopher T. Salyer, Shiann Schmidt, and Lacey M. Moore as Defendants in this action.

Signed: June 23, 2017

Richard L. Voorhees
United States District Judge

26